**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KURT LAUK,<br><br>    Plaintiff,<br><br>    v.<br><br>SOLERA GLOBAL HOLDING CORP. and<br>SOLERA HOLDINGS INC.,<br><br>    Defendants. | C.A. No. 19-1718-CFC |

**DEFENDANTS SOLERA GLOBAL HOLDING CORP. AND
SOLERA HOLDINGS INC.'S ANSWER AND
<u>AFFIRMATIVE DEFENSES</u>**

<u>PRELIMINARY STATEMENT</u>

This suit is part of an orchestrated campaign by Anthony Aquila, the former CEO of Solera, to sully the reputation of Solera and its controlling shareholders. Plaintiff, Dr. Kurt Lauk, is Aquila's crony and hand-picked former member of the Solera Global Holding Corp. ("SGHC") Board of Directors.[1] Aquila and Lauk were both removed from the Board for violating duties to Solera by putting the interests of Aquila above those of Solera. For example:

- Lauk tried to convince the SGHC Board of Directors to grant Aquila a $10 million bonus despite the fact that Aquila failed to meet his performance targets.

- Lauk attempted to quash an internal investigation after a complaint (concerning a female employee) was made accusing Aquila of behavior in violation of Solera's anti-harassment policies.

---

[1] Aquila's lawsuit against Solera referenced in footnote 3 of the Complaint was dismissed by the Delaware Chancery Court yesterday.

1

- Lauk was the *only* director who voted against reprimanding Aquila and directing remedial measures once Aquila admitted improper behavior in violation of Solera policies.

- Lauk assisted Aquila to plan, and accepted a position in, Aquila's new business venture—the venture that Aquila spent the last six months of his tenure at Solera trying to build up through fundraising and poaching Solera employees.

- While he was still on the Board, time and again, rather than focusing on Solera's best interests, Lauk linked arms with Aquila, breaching his duties to Solera, cooperating in Aquila's breaches, conspiring with Aquila to breach Aquila's written contracts with Solera, and otherwise breaching the Solera Conflict of Interest and Code of Conduct Policy.

SGHC's other directors (including two directors not affiliated with Vista Equity Partners), did not permit Lauk and Aquila to operate Solera for their own personal gain. Ultimately, Lauk's blatant breaches of his duties to Solera resulted in his removal from the Board.

Lauk is no whistleblower. His Complaint recounts a series of strategic decisions made by the management team and Board of Solera and alleges transactions should not have taken place that *never took place*. Tellingly, Lauk began raising these purported "concerns" at Aquila's behest only after it had become clear that Aquila would be terminated as CEO and many months after Lauk learned that other Solera directors wanted him removed from the Board.

Much of what is alleged in the Complaint is factually inaccurate and wholly irrelevant to the dispute at hand. The dispute centers around whether Lauk is entitled to less than $100,000 of stock options. The portion of the Stock Option Agreement that Lauk relies on applies only to employees, not directors. Solera has breached no obligations to Lauk. Rather, it has insisted that

Lauk receive no more and no less than what is provided for by his agreements with Solera. Lauk is entitled only to what the plain terms of his Stock Option Agreement and Board Member Services Agreement provide.

There is no dispute that 60% of the Time-Based Options granted to Lauk under his Stock Option Agreement were vested options as of May 26, 2019, the date he was removed from the Board. But Lauk claims that an additional 20% of his Time-Based Options automatically vested on May 26, 2019 pursuant to a provision of the Stock Option Agreement that allows for accelerated vesting upon certain so-called "Qualifying Termination" events that apply only to Solera *employees*, which Lauk is not and never has been. Indeed, the Stock Option Agreement and the included Stock Option Plan explicitly distinguish between *employees* and *non-employees* (like Lauk) for purposes of termination, vesting, and other relevant terms. In any event, as Solera has previously notified Lauk, he has not perfected his exercise of *any* vested options as he has intentionally ignored the clear requirements and deliverables to exercise set forth in his Stock Option Agreement.

## FACTUAL BACKGROUND

### A. The Parties

1. Solera was formed in 2005 by Anthony "Tony" Aquila ("Aquila"). Solera's initial operations consisted primarily of developing its business plan, recruiting personnel, providing consulting services, raising capital, and identifying and evaluating operating assets for potential acquisition. Solera had no significant business operations until it partnered with GTCR Golder Rauner to acquire the business that would form the original Solera business, namely ADP, Inc.'s automotive claim services group (the "ADP Claims Business"). At the time it was

acquired by Solera, the ADP Claims Business had already been in existence for nearly 40 years, generated over $400 million in annual revenue, and had operations across dozens of countries.[2]

2.      Solera has become a multi-national, privately owned data and software enterprise that today operates in nearly 90 countries across the world.  Solera is now a global leader in risk- and asset-management software-as-a-service solutions for the automotive and insurance industries.  The Company completed its initial public offering in 2007.

3.      Lauk was proposed to serve as an independent director in the fall of 2012 by an executive recruiting firm retained by Solera. Lauk was nominated for the Solera board and became an independent director of Solera on or about June 4, 2013.  Lauk was at no time an employee of Solera.

4.      On or about March 3, 2016, affiliates of Vista Equity Partners ("Vista") and other investors acquired Solera in a $6.5 billion take-private transaction.[3]  Lauk's Board membership ended at the time the take-private transaction closed.  Later in 2016, however, upon Aquila's recommendation and request, Lauk rejoined the Board.  Vista had no prior relationship with Lauk.  Aquila represented that Lauk could use his significant industry experience and array of relationships and contacts (especially with German automotive companies) to Solera's business interests.  The Solera Board following the take-private consisted of Vista's representatives, outside directors appointed by Baring Private Equity Asia ("Baring") and Koch Equity Development ("Koch"), Aquila, and Lauk.

---

[2]      *See* Solera Holdings, Amendment No. 5 to Form S-1, at 3 (May 9, 2007); *Solera and GTCR to Acquire Claims Services Group from Automatic Data Processing, Inc.*, BUSINESS WIRE (Feb. 9, 2006), https://www.businesswire.com/news/home/20060209005649/en/Solera-GTCR-Acquire-Claims-Services-Group-Automatic.

[3]      *See In re Solera Holdings, Inc. Stockholder Litig.*, 2017 WL 57839 (Del. Ch. Jan. 5, 2017).

5.　　Since closing the take-private, Vista has not been paid dividends by Solera, or charged monitoring or other fees that are standard among many financial sponsors in the private equity industry.

**B.　　Lauk's Agreements With Solera**

6.　　As a Solera director and consultant, Lauk was subject to Solera's Conflict of Interest and Code of Conduct Policy (the "Policy").　The Policy provides, in relevant part:

> [M]embers of the Company's Board of Directors are expected to act in accordance with their fiduciary duties under Delaware law; to promptly disclose all conflicts of interests to the fellow directors of the Company as required by Delaware law; offer to recuse themselves from participation in any decision in which there is a conflict between their personal interests and the interests of the Company; and, except as permitted by the Company's charter and Delaware law, to refrain from taking advantage of corporate opportunities that come to their attention as a result of service as a director of the Company absent approval of the Board of Directors.　Any waiver of application of the Code with respect to executive officers or directors must be approved by the Board of Directors or its designated committee and must be disclosed to the extent required by law or regulation.

7.　　On May 31, 2016, Solera Holdings, Inc. and Lauk executed a Director Expense Reimbursement Agreement (the "Expense Agreement") that set forth the terms under which Lauk would be reimbursed for his reasonable expenses incurred in connection with his services as a member of the SGHC Board.　The parties subsequently executed an Amendment to the Expense Agreement dated February 7, 2018.　Neither the Expense Agreement nor the Amendment thereto was presented to the Board for approval.

8.　　On December 14, 2016, Solera Holdings, Inc. and Lauk executed a Board Member Services Agreement that set forth the compensation Lauk would receive in his capacity as a member of the Board of Directors of Solera Holdings, Inc., an indirect, wholly-owned subsidiary of SGHC.　The parties subsequently executed an Amendment to the Board Services

Agreement dated March 22, 2017, whereby Lauk's annual director fee was increased. Neither the Board Member Services Agreement nor the Amendment thereto was presented to the Board for approval.

9.      On December 14, 2016, Solera and Lauk also executed a Director Consulting Services Agreement that set forth the compensation Lauk would receive in his capacity as a member of the Board of Directors of Audatex AUTO Online GmbH, an indirect, wholly-owned subsidiary of SGHC. The Director Consulting Agreement was not presented to the Board for approval.

10.      On June 27, 2018, SGHC and Lauk entered into a Stock Option Agreement whereby Lauk received, subject to the terms and conditions of the 2016 Stock Option Plan (the "Plan"), options to acquire certain shares of Solera stock. The Stock Option Agreement provides that Delaware law will govern the interpretation of any issues related to the Plan.

11.      Section 2(c)(iv)(A) of the Stock Option Agreement provides that for employees under certain circumstances—defined as a "Qualifying Termination"—the vesting of certain unvested options will accelerate as follows:

>   (iv)   **Certain Terminations of Employment**.
>
>   (A) **Service Options**. Notwithstanding anything herein to the contrary, in the event that Optionholder's **employment** with the Company or its Subsidiaries terminates due to Optionholder's **termination without Cause, Optionholder's resignation for Good Reason or Optionholder's death or Disability (each such termination, a "Qualifying Termination")**, the Service Options that would have vested during the twelve months immediately following the Termination Date had the Optionholder **remained employed** by the Company or its Subsidiaries during such period shall vest as of such Termination Date.

Section 2(c)(iv)(A) (emphases added).  Section 2(c)(iv)(A) does not apply to non-employees (such as directors and consultants) who might receive options to purchase stock.  The Plan defines "Termination Date" as follows:

> "**<u>Termination Date</u>**" means the first date on which a Participant is no longer an employee of and not providing services as a director of, or consultant or advisor to, the Company or its Subsidiaries for any reason **(or in the case of a Participant who was not an employee, the first date on which such Participant is no longer acting as a director or officer of, or consultant or advisor** to, the Company or its Subsidiaries).

*Id.* at Plan ¶ 2 (emphasis added).  The Stock Option Agreement and the Plan distinguish between employees, on the one hand, and non-employees (such as directors and consultants), on the other.[4]

### C. Lauk Disregards His Duties And Conspires With Aquila To Benefit Aquila At Solera's Expense

12.     Following the 2016 take-private transaction, Aquila's leadership failures and misplaced spending priorities, among other things, led to Solera missing its Fiscal Year 2018 financial plan objectives ("FY18 Plan").  Nevertheless, Aquila proposed that his Fiscal Year 2018 annual bonus payment be based, not upon the established FY18 Plan, but upon an adjusted plan with lower financial targets and that he also receive a performance multiplier of 4x, resulting in a proposed bonus payment of $3.6 million.  In August 2018, the Board, including Lauk, ultimately approved and awarded, as an accommodation to Aquila a performance multiplier of 2x, resulting in an actual bonus payment to Aquila of $1.8 million.

13.     Lauk was a staunch and unquestioning defender of Aquila, who had recommended him to the Board.  In an executive session following the September 7, 2018 Board

---

[4]     At all times, Lauk had no contractual right to continued service on the Solera Board and could be removed at any time for any reason or no reason by the holders of a majority of the votes of the common stockholders of Solera.

meeting, Lauk proposed that Aquila receive a *$10 million bonus*. This was over 5 times the annual bonus amount just awarded to Aquila the previous month. Lauk's proposal was roundly rejected by the remainder of the Board, including the directors appointed by Baring and Koch.

14. Lauk also defended Aquila's interests over Solera's interests even as Aquila's brash, vulgar, and belittling comments to colleagues resulted in harm to Solera by means of significant personnel turnover, including in the executive ranks. A 2018 investigation initiated after a complaint concerning a female employee uncovered aggressive and abusive behavior by Aquila in violation of Solera's Code of Conduct, substantiated by Aquila's own admissions.

15. But rather than focus on protecting Solera, in the fall of 2018, Lauk tried to have the Board sweep Aquila's known behavior under the rug. Lauk repeatedly tried to quash the investigation into Aquila's actions, and after the investigation identified, and Aquila admitted, behavior in violation of Solera's Code of Conduct, Lauk was the only director to vote *against* reprimanding Aquila for his conduct and directing him to undertake remedial measures. Lauk was unsuccessful in protecting Aquila over Solera and in November 2018, the remaining Solera Board members (including the directors appointed by Baring and Koch) formally reprimanded Aquila.

16. Thereafter, Aquila began in earnest his preparations for his departure from Solera and establishment of a new, alternative business venture that would include Lauk as well. Aquila distanced himself from the Company's operations and solicited Solera employees to join his next venture, while still serving as Solera's CEO.

17. Lauk supported Aquila in this process. At a meeting in November 2018, certain Solera Board members appointed by Vista made clear to Aquila that Lauk's performance as a Board member made him unsuitable for continued service on the Solera Board and that Lauk

should be removed from the Board. Aquila insisted that he should be the one to approach Lauk, communicate the Board's position to Lauk, and seek Lauk's resignation. Instead of following through on his promise to the Board, Aquila ignored his promise and duties to Solera and conspired with Lauk to launch Aquila's new venture.

18. Over the next six months, Aquila spent significant time (which included using private jet flight hours paid for by Solera) to raise money for his next venture, as well as for personal matters. On or about March 6, 2019, Aquila informed members of the Board that he intended to leave Solera. The next day, Aquila informed members of the Solera executive team of his plans. He set no date for his departure from the Company.

19. In approximately early May 2019, at a Solera gathering at his ranch in Jackson, Wyoming, Aquila announced that he would be leaving Solera as soon as possible to embark on a new business venture he called "Founders Select." The new venture would co-invest in businesses and provide operational and strategic advice to such businesses' management teams. Aquila further announced that Lauk, *who was still serving on Solera's Board*, as well as four then-current Solera employees (including the two highest-ranking financial officers), would leave Solera to join Aquila at Founders Select.[5] Aquila's actions were a blatant violation of his obligations to Solera, including his obligation not to solicit or hire any current Solera employees or consultants for his own benefit or for employment at any of his personal businesses. Lauk, moreover, not only had clearly *accepted* a position at Aquila's anticipated future venture while still a member of the Solera Board—Solera also believes that Lauk actively participated in Aquila's planning and execution of Aquila's new venture in violation of his duties to Solera.

---

[5] The then-current employees were Renato Giger, Solera's Chief Financial Officer; Ron Rogozinski, Solera's Chief Accounting Officer; Andy Balzer, Solera's Head of R3PI (Solera's "Innovation Hub"); and Michael Horvath, Chief of Staff in Solera's Office of the CEO.

20.     Aquila's actions, including with respect to Lauk, gave Solera grounds to terminate Aquila's employment for "cause." Nevertheless, Solera provided Aquila the opportunity to leave his position voluntarily. But over the ensuing weeks, despite Solera's good-faith efforts to resolve the terms of Aquila's departure from Solera, Aquila refused to confirm that he would abide by his continuing obligations to Solera, including his obligation not to poach Solera employees.

21.     Solera believes Lauk was aware of Aquila's obligations to Solera not to solicit or hire any current Solera employees or consultants for his own benefit or for employment at any of his personal businesses.

22.     When it became apparent that Aquila was leaving Solera and Lauk would be removed from the Board, Lauk for the first time voiced complaints about Vista's role as Solera's controlling investor. On March 31, 2019, Lauk sent Solera's Board of Directors a manifestly self-serving letter that Solera believes was also intended to serve Aquila's interests (the "March 31 Letter").

23.     The March 31 Letter claimed that:

- Solera selected Vista to take Solera private because of "Vista's commitment and representation to Solera, its Board, and entire executive team, to support Tony [Aquila's] ability to capitalize on the many attractive opportunities for growth and value creation."

- that "Vista's pitch . . . was that after the merger was completed, Vista would deleverage Solera's balance sheet, seek strategic acquisitions for the purchase of additional data, and expand Solera's global reach."

- Following the take-private, Vista's support for Aquila's "vision" ceased, and in fact became "antithetical to the very vision Solera was driving to achieve." In particular, Vista failed to deleverage Solera's balance sheet and instead increased the Company's leverage, which created "more pressure and burdens for the company."

- When Aquila sought to purchase Lytx, Vista rejected the proposal "based on faulty and incorrect financial assumptions that damaged Solera." Instead, Vista attempted to have Solera purchase Omnitracs, one of Vista's portfolio companies, in a transaction that "overvalued Omnitracs for the benefit of the Vista fund investors." Passing on Lytx in favor of Omnitracs "damaged Solera by approximately $1 billion in value creation."

24. Aquila initially tried to prevent the directors appointed by Vista from responding to Lauk's letter. As it became clear that Lauk had conspired with Aquila to join his next venture and violated his duties to Solera, however, the Vista directors found it appropriate to respond to Lauk's fabricated allegations and factual inaccuracies.

25. The Solera directors appointed by Vista responded to Lauk's March 31 Letter on May 24, 2019 and pointed out a number of "glaring inaccuracies and misleading statements" in Lauk's letter (the "May 24 Letter"). Among other things, the letter pointed out that:

- Vista's offer to buy Solera did not include *any representation* that it would partner with Aquila. The Special Committee selected Vista's offer in accordance with its fiduciary duties owed to the public shareholders of Solera because Vista offered the most attractive price to the selling public shareholders; that price was validified in subsequent litigation.[6]

- In anticipation of the 2016 take-private transaction, the Solera Board formed a Special Committee tasked with determining the most attractive transaction for the Company's public shareholders. The Special Committee did not consider whether any potential buyer would partner with Aquila—indeed, the special committee was formed in part to *remove* Aquila from the process.

- In 2017, Solera's management, led by Aquila, had voluntarily performed due diligence on Omnitracs, a fleet management software and hardware company, and put forth an indication of interest *completely independent* of Vista. Omnitracs rejected Solera's arms-length bid, as well as bids from other parties participating in the process.[7]

---

[6] *See In re Solera Holdings, Inc. Stockholder Litig.*, 2017 WL 57839 (Del. Ch. Jan. 5, 2017); *In re Appraisal of Solera Holdings, Inc.*, 2018 WL 3625644 (Del. Ch. July 30, 2018).

[7] Solera's arms-length bid, based on its independent, initial diligence of Omnitracs, was less than what the press was reporting could be the value of Omnitracs. *See* Jaewon Kang, *Vista Equity Seeks Buyer for Fleet Software Company Omnitracs*, WALL ST. J. (May 31, 2017),

- In the process of evaluating a potential acquisition of Lytx, a provider of video telematics solutions for driver risk management, in 2017, Solera and Vista performed a thorough analysis of a potential acquisition of Lytx. Ultimately, after significant diligence and financial modeling, the controlling shareholders of Solera came to a view on Lytx's valuation that did not lead to a successful bid.

26. In addition to the inaccuracies specifically noted in the May 24 Letter, Lauk's allegations in the March 31 Letter were inaccurate and misleading for the following reasons:

- The fact that Lauk claimed the special committee had accepted Vista's bid because Vista would support Aquila is emblematic of his fundamental misunderstanding of a director's duties. The special committee accepted Vista's bid because it provided the greatest value to Solera's public shareholders—not to further Aquila's personal agenda for the Company.

- Lauk fabricated the allegations against Vista in the March 31 Letter to appear as a "whistleblower" against Vista *over a year after* Vista allegedly pushed for an acquisition by Solera of Omnitracs—a deal that never happened. Lauk attended the Board meetings at which Omnitracs and Lytx were discussed and had every chance to voice his concerns.

- Omnitracs is still owned by Vista, and Solera has never acquired any portfolio company controlled by Vista.[8]

- Lytx was owned by GTCR, the private equity firm that had backed Aquila to purchase ADP back in 2005 to form the core of Solera's business, and Aquila appeared to be personally very invested in making the deal happen even if it meant that Solera would have to take on significant debt and effect the transaction through a structure, and at a price, that was unacceptable to the controlling shareholders of Solera.

- With respect to the Company's leverage, Lauk *voted in favor* of two financing transactions that authorized the Company to take on more debt. In the litigation that ensued following the take-private transaction, Aquila also testified that the ability to continue to spend capital on acquisitions, which likely required increasing Solera's leverage, was an important factor in taking the Company private.

---

https://www.wsj.com/articles/vista-equity-seeks-buyer-for-fleet-software-company-omnitracs-1496267023

[8]     *See* Vista Equity Partners, Companies, Private Equity Portfolio, https://www.vistaequitypartners.com/company/omnitracs/.

**D.    Lauk And Aquila Are Removed From The Board**

27.    On May 26, 2019, a special committee of the Board consisting of all directors other than Aquila (the "Special Committee") held a special meeting to consider the consequences of Aquila's repeated and material violations of his obligations to Solera.  The Special Committee provided Lauk with notice of the meeting, but he refused to attend.  In a letter May 26, 2019, Lauk claimed that it was unreasonable and inequitable to schedule the telephonic meeting at at 2 a.m. Stuttgart time over a holiday weekend (*i.e.*, Memorial Day) when in fact the meeting was scheduled for 4 p.m. Stuttgart time and Memorial Day is not observed in Germany.  Aquila likewise refused to attend.  After deliberation, the Special Committee determined that Aquila had willfully and materially violated his obligations to the Company by soliciting Solera employees and consultants for his own benefit, and resolved to terminate his employment for "cause" pursuant his employment agreement.  At that same time, in light of Lauk's prior history of protecting Aquila and not acting in the best interests of Solera, Lauk was removed from the Board.

28.    On May 26, 2019, Lauk was informed of his removal from the Board and the conclusion of all consulting agreements between Lauk and Solera.

**E.    Lauk Deficiently Attempts To Exercise His Options**

29.    On August 9, 2019 (received by Solera on August 21, 2019), Lauk sent Solera a "notice of exercise" of 1,230.40 options (which were all time-based options) Lauk claimed were vested at that time.  Lauk's notice claimed that 40% of his 1,538 time-based options had vested as of June 27, 2018, that an additional 5% vested each quarter thereafter until he was removed from the Board in May 2019 (*i.e.*, 20%), and that a further 20% of his options vested on May 26,

2019 by operation of Section 2(c)(iv)(A) of the Stock Option Agreement on his claim that he was "terminated without cause."

30.    Solera, through counsel, responded by letter dated August 26, 2019.   Solera identified certain deficiencies in Lauk's notice of exercise and provided Lauk with the necessary information to remedy those deficiencies and perfect his exercise.   Additionally, while Solera does not dispute that 60% of Lauk's time-based options had vested as of May 26, 2019, it explained in its response that as Lauk's removal from the Board on May 26, 2019 was not a "Qualifying Termination," Lauk was incorrect that an additional 20% of his options had vested on that date.[9]  Lauk claims that these 20% of his options have a value of $1,367.58 per share for a total of $87,262.54.

31.    Lauk did not dispute that his notice of exercise was deficient or thereafter perfect his exercise.   He also did not raise any concerns about Solera's conclusion that Lauk had not experienced a "Qualifying Termination."   Instead, Lauk filed suit in this Court, as part of Aquila's litigation campaign against Solera.

Solera herein answers the Complaint, asserts affirmative defenses, and pleads six counterclaims against Lauk.

---

[9]    Following his removal as a Solera director and consultant, the Stock Option Agreement placed certain restrictions on Lauk's ability to compete with Solera.  Specifically, Lauk could not participate in any "Competitive Activity" during a twelve-month Restricted Period following his removal.  To the extent Lauk has engaged in any Competitive Activity following his removal on May 26, 2019, Solera would be entitled to repurchase his vested options at Original Cost—*i.e.*, $0.

## DEFENDANTS' ANSWER TO THE COMPLAINT

Defendants Solera Global Holding Corp. and Solera Holdings, Inc. (collectively, the "Defendants") hereby answer the Complaint For Specific Performance, Breach of Contract – Options, Breach of Contract – Board Member Services Agreement and Conversion as follows:

### THE PARTIES[10]

1.      Solera admits that Lauk served on the Board of Directors of Solera Global Holding Corp. and that Defendants are both Delaware corporations.  Solera lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the final sentence of Paragraph 1 of the Complaint and therefore denies the same.

2.      Solera admits the allegations contained Paragraph 2 of the Complaint.

3.      Solera denies that Lauk is entitled to the relief requested in the Complaint and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint and therefore denies the same.

4.      Solera denies that Lauk is entitled to the relief requested in the Complaint and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4 of the Complaint and therefore denies the same.

### JURISDICTION AND VENUE

5.      Solera denies the allegations in Paragraph 5 of the Complaint.  To the extent that the allegations contained in Paragraph 5 state a legal conclusion, no response is required.

---

[10]     Defendants state that they are not required to respond to the headings and subheadings within the Complaint.  To the extent that a response is required, Defendants deny any averments in the headings and subheadings of the Complaint.  The headings reproduced herein are included solely for reference.  In addition, Defendants state that they are not required to respond to the exhibits to the Complaint.  To the extent any allegation is not expressly admitted herein, it is denied.

6.     Paragraph 6 of the Complaint states a legal conclusion to which no response is required.

7.     Paragraph 7 of the Complaint states a legal conclusion to which no response is required, except that Solera admits that Solera Holdings, Inc. and Solera Global Holdings Corp. were incorporated in Delaware, are Delaware corporations, and have agents for service of process in Wilmington, Delaware.

8.     Paragraph 8 of the Complaint states a legal conclusion to which no response is required, except that Solera admits that Paragraph 20 of the 2016 Stock Option Plan includes the provision recited in Paragraph 8 of the Complaint.

## CLAIMS COMMON TO ALL COUNTS

9.     Solera admits the allegations contained in Paragraph 9 of the Complaint.

10.     Solera denies the allegations contained in Paragraph 10 of the Complaint, except admits that Lauk and Solera Holdings, Inc. executed a Board Member Services Agreement dated December 14, 2016 which was amended by agreement dated March 22, 2017, and refers to those documents for their contents.

11.     Solera denies the allegations contained in the first sentence of Paragraph 11 of the Complaint.  Solera lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 11 of the Complaint and therefore denies the same.

12.     Solera lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint and therefore denies the same.

13.     Solera denies the allegations contained in Paragraph 13 of the Complaint, except that Solera admits that Lauk introduced Solera to certain of his contacts.

14.     In response to the allegations contained in Paragraph 14 of the Complaint, Solera admits that Solera Global Holding Corp. and Lauk entered into the Stock Option Agreement dated June 27, 2018, and refers to that document for its contents.

15.     Solera denies the allegations in Paragraph 15 of the Complaint and refers to the Stock Option Agreement for its contents.

16.     Solera admits the allegations in Paragraph 16 of the Complaint.

17.     Solera lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and therefore denies the same.

18.     Solera lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and therefore denies the same, except that Solera admits that certain funds affiliated with Vista purchased 1.089 million shares SGHC stock for $1.089 billion.

19.     Solera admits the allegations contained in the first sentence of Paragraph 19 of the Complaint.  Solera denies the remainder of the allegations in Paragraph 19 of the Complaint.

20.     Solera denies the allegations contained in Paragraph 20 of the Complaint as to Solera.  Solera lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint as to Aquila and therefore denies the same.

21.     Solera denies the allegations contained in Paragraph 21 of the Complaint, except admits that SGHC sold 0.8 million shares of Series A Preferred Stock to affiliates of Koch, Goldman Sachs, and the Caisse de dépôt et placement du Québec for $0.784 billion and 0.25 million shares of Series B Preferred Stock to affiliates of Koch for $0.25 billion.

22.     Solera denies the allegations contained in Paragraph 22 of the Complaint as to Solera.  Solera lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint as to Aquila and therefore denies the same.

23.     Solera admits the allegations contained in Paragraph 23 of the Complaint.

24.     Solera denies the allegations contained in Paragraph 24 of the Complaint, except that Solera admits that Solera retained Aquila as its CEO and Chairman of the Board following the take-private transaction, that Lauk executed a Board Member Services Agreement dated December 14, 2016 (and refers to that document for its contents), and that Lauk served as a member of the Board of Solera Global Holding Corp. from May 31, 2016 until his removal on May 26, 2019.

25.     Solera denies the allegations contained in Paragraph 25 of the Complaint.

26.     Solera denies the allegations contained in Paragraph 26 of the Complaint.

27.     Solera denies the allegations contained in Paragraph 27 of the Complaint, except that Solera lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence of Paragraph 27 of the Complaint as to Aquila or Lauk and therefore denies the same.

28.     Solera denies the allegations contained in Paragraph 28 of the Complaint, except admits that Solera had evaluated a potential acquisition of Lytx in 2017.

29.     Solera lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint and therefore denies the same, except that Solera admits that Omnitracs, LLC is owned by affiliates of Vista and other investors.

30. Solera denies the allegations regarding "self-dealing and conflict of interest" contained in Paragraph 30 of the Complaint. Solera admits that Christian Sowul and Darko Dejanovic have served on the Board of Solera Global Holdings Corp. and on the Board of Omnitracs, LLC. Solera lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 30 of the Complaint and therefore denies the same.

31. Solera denies the allegations contained in Paragraph 31 of the Complaint, except that it admits that Christian Sowul has served on both the Board of Solera Global Holdings Corp. and on the Board of the Omnitracs, LLC.

32. Solera denies the allegations contained in Paragraph 32 of the Complaint, except that it admits that Christian Sowul has served on the Board of Omnitracs, LLC.

33. Solera denies the allegations contained in Paragraph 33 of the Complaint, except that Solera admits that Dejanovic has served on the Board of Solera Global Holdings Corp. and on the Board of Omnitracs, LLC, LLC.

34. Solera denies the allegations contained in Paragraph 34 of the Complaint, except to the extent that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint, in which case it therefore denies the same.

35. Solera denies the allegations contained in Paragraph 35 of the Complaint, except to the extent that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint, in which case it therefore denies the same.

36. Solera denies the allegations contained in Paragraph 36 of the Complaint.

37.     Solera denies the allegations contained in Paragraph 37 of the Complaint.

38.     Solera denies the allegations contained in Paragraph 38 of the Complaint, except to the extent that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint, in which case it therefore denies the same.

39.     Solera denies the allegations contained in Paragraph 39 of the Complaint, except to the extent that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Complaint, in which case it therefore denies the same.

40.     Solera admits that Aquila served as CEO of Solera.  Solera otherwise denies the allegations contained in Paragraph 40 of the Complaint and footnote 1 of the Complaint, except to the extent that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Complaint, in which case it therefore denies the same.

41.     Solera denies the allegations contained in Paragraph 41 of the Complaint, except to the extent that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint, in which case it therefore denies the same.

42.     Solera admits that Lauk sent a letter to the Board of Solera Global Holding Corp. dated March 31, 2019 that contains the excerpted language contained in Paragraph 42 of the Complaint, but refers to that document for its complete contents.  Solera otherwise denies the allegations contained in Paragraph 42 of the Complaint.

43.    Solera denies the allegations contained in Paragraph 43 of the Complaint, except that it admits that it was decided that no "special committee" was needed in response to Lauk's self-serving allegations and that Lauk sent a letter dated May 26, 2019 that contained the excerpted language contained in Paragraph 43 of the Complaint, but refers to the document for its complete contents.

44.    Solera admits that Solera Global Holdings Corp. removed Lauk as a director on May 26, 2019.  Solera denies the allegations contained in Paragraph 44 and footnote 2 of the Complaint, except to the extent that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations Paragraph 44 and footnote 2 of the Complaint, in which case and therefore denies the same, and Solera admits that Solera Global Holdings Corp.

45.    Solera admits that Lauk's letter was dated August 9, 2019, except clarifies that it was received by Solera on August 21, 2019, and also admits that Lauk stated he was exercising all vested options, but clarifies that his notice of exercise was deficient in certain respects. Solera further admits that Lauk had been granted time-based options to purchase 1,538 shares of Solera Holdings at an exercise price of $1,012.97, but clarifies that only a portion of these options had vested at the time of Lauk's notice of exercise.  Solera otherwise denies the allegations contained in Paragraph 45 of the Complaint.

46.    Solera admits that Section 2(e)(ii) of the Stock Option Agreement includes the language excerpted in Paragraph 46 of the Complaint, but refers to that document for its complete contents.

47.    Solera denies the allegations contained in Paragraph 47 of the Complaint, except refers to the Stock Option Agreement for the vesting provisions regarding Lauk's options.

48.    Solera denies the allegations contained in Paragraph 48 of the Complaint.

49. Solera admits the allegations contained in Paragraph 49 of the Complaint.

50. Solera denies the allegations contained in Paragraph 50 and footnote 3 of the Complaint, except that Solera admits that its counsel sent Lauk a letter on August 26, 2019 and that Aquila filed a lawsuit against Solera in The Court Of Chancery Of The State Of Delaware, *Anthony Aquila v. Solera Global Holding Corp., et al.*, C.A. No. 2019-0702-SG, that Aquila filed a Motion for a Temporary Restraining Order in that action, that Solera opposed that motion, and that the Court of Chancery denied Aquila's Motion for a Temporary Restraining Order and dismissed the lawsuit on September 19, 2019.

51. Solera admits that Section 2(c)(iv)(A) of the Stock Option Agreement includes the language excerpted in Paragraph 51 of the Complaint, but refers to that document for its complete contents.

52. Solera admits that the term "Cause" is defined in Paragraph 2 of the 2016 Stock Option Plan appended to the Stock Option Agreement, but refers to that document for its complete contents.

53. Solera denies the allegations contained in Paragraph 53 of the Complaint, except that Solera admits that Lauk did not resign from the Solera Global Holdings Corp. Board.

54. Solera denies the allegations contained in Paragraph 54 of the Complaint.

55. Paragraph 55 of the Complaint states a legal conclusion to which no response is required. To the extent that a response is required, Solera denies the allegations contained in Paragraph 55 of the Complaint.

56. Solera incorporates herein by reference the responses set forth above to each of the allegations contained in Paragraphs 1 through 55 of the Complaint.

57. Solera admits the allegations contained in Paragraph 57 of the Complaint.

58.     Paragraph 58 of the Complaint states a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 58 of the Complaint.

59.     Solera admits the allegations contained in Paragraph 59 of the Complaint, but clarifies that 40% of the Time-Based Options granted to Lauk in the Stock Option Agreement vested on the Vesting Commencement Date.

60.     Solera denies the allegations contained in Paragraph 60 of the Complaint, except that Solera admits that 5% of Lauk's Time-Based Options vested on the last day of each calendar quarter after the Vesting Commencement Date of June 27, 2018 pursuant to the vesting schedule agreed upon by the Solera Global Holdings Corp. Board regarding Lauk's options and that Solera Global Holdings Corp. removed Lauk as a director on May 26, 2019.

61.     Solera denies the allegations contained in Paragraph 61 of the Complaint, except admits that Lauk was removed as a director of Solera Global Holdings Corp. on May 26, 2019.

62.     Solera denies the allegations contained in Paragraph 62 of the Complaint, except that Solera admits that Lauk possessed the right to cashless exercise of any vested options.

63.     Paragraph 63 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 63 of the Complaint.

64.     Solera admits the allegations contained in Paragraph 64 of the Complaint, but states that the terms of the Stock Option Agreement speak for themselves.

65.     Solera admits the allegations contained in Paragraph 65 of the Complaint, but states that Lauk's exercise to date has been deficient under the terms of the Stock Option Agreement, as Solera informed Lauk in its August 26, 2019 communication.

66.     Paragraph 66 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 66 of the Complaint.

67.     Solera incorporates herein by reference the responses set forth above to each of the allegations contained in Paragraphs 1 through 66 of the Complaint.

68.     Solera admits the allegations contained in Paragraph 68 of the Complaint.

69.     Paragraph 69 of the Complaint states a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 69 of the Complaint.

70.     Solera admits the allegations contained in Paragraph 70 of the Complaint, but clarifies that 40% of the Time-Based Options granted to Lauk in the Stock Option Agreement vested on the Vesting Commencement Date.

71.     Solera denies the allegations contained in Paragraph 71 of the Complaint, except that Solera admits that 5% of Lauk's Time-Based Options vested on the last day of each calendar quarter after the Vesting Commencement Date of June 27, 2018 pursuant to the vesting schedule agreed upon by the Solera Global Holdings Corp. Board regarding Lauk's options and that Solera Global Holdings Corp. removed Lauk as a director on May 26, 2019.

72.     Solera denies the allegations contained in Paragraph 72 of the Complaint, except admits that Lauk was removed as a director of Solera Global Holdings Corp. on May 26, 2019.

73.     Solera denies the allegations contained in Paragraph 73 of the Complaint, except that Solera admits that Lauk possessed the right to cashless exercise of his vested options.

74.     Paragraph 74 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 74 of the Complaint.

75.     Solera admits the allegations contained in Paragraph 75 of the Complaint.

76.     Solera admits the allegations contained in Paragraph 76 of the Complaint, but clarifies that Lauk's exercise to date has been deficient under the terms of the Stock Option Agreement, as Solera informed Lauk in its August 26, 2019 communication.

77.     Solera admits the allegations contained in Paragraph 77 of the Complaint, but clarifies that Lauk's exercise to date has been deficient under the terms of the Stock Option Agreement, as Solera informed Lauk in its August 26, 2019 communication.

78.     Solera denies the allegations contained in Paragraph 78 of the Complaint.

79.     Paragraph 79 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 79 of the Complaint.

80.     Solera incorporates herein by reference the responses set forth above to each of the allegations contained in Paragraphs 1 through 79 of the Complaint.

81.     Solera denies the allegations contained in Paragraph 81 of the Complaint, except admits that Lauk and Solera Holdings, Inc. executed a Board Members Services on December 14, 2016, which was amended by agreement dated March 22, 2017.

82.     Paragraph 82 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 82 of the Complaint.

83.     Paragraph 83 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 83 of the Complaint.

84.     Paragraph 84 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 84 of the Complaint.

85.     Solera incorporates herein by reference the responses set forth above to each of the allegations contained in Paragraphs 1 through 84 of the Complaint.

86.     Solera admits the allegations contained in Paragraph 86 of the Complaint.

87.     Paragraph 87 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 87 of the Complaint.

88.     Solera admits the allegations contained in Paragraph 88 of the Complaint, but clarifies that 40% of the Time-Based Options granted to Lauk in the Stock Option Agreement vested on the Vesting Commencement Date.

89.     Solera denies the allegations contained in Paragraph 89 of the Complaint, except except that Solera admits that 5% of Lauk's Time-Based Options vested on the last day of each calendar quarter after the Vesting Commencement Date of June 27, 2018 pursuant to the vesting schedule agreed upon by the Solera Global Holdings Corp. Board regarding Lauk's options and that Solera Global Holdings Corp. removed Lauk as a director on May 26, 2019.

90.     Solera denies the allegations contained in Paragraph 90 of the Complaint, except admits that Lauk was removed as a director of Solera Global Holdings Corp. on May 26, 2019.

91.     Solera denies the allegations contained in Paragraph 91 of the Complaint, except that Solera admits that Lauk possessed the right to cashless exercise of any vested options.

92.     Paragraph 92 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 92 of the Complaint.

93.     Paragraph 93 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 93 of the Complaint.

94.     Paragraph 94 contains a legal conclusion to which no response is required.  To the extent that a response is required, Solera denies the allegations contained in Paragraph 94 of the Complaint.

95.     Solera denies the allegations contained in Paragraph 95 of the Complaint.  To the extent that the allegations contained in Paragraph 95 state a legal conclusion, no response is required.  To the extent that a response is required to any legal conclusions, Solera denies the allegations in Paragraph 95 of the Complaint.

## RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny Plaintiff's prayer for relief in its entirety.  Judgment should be entered against Plaintiff in favor of Defendants, and Plaintiff should pay Defendants' costs and attorneys' fees and expenses.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants submit the following affirmative defenses to the claims for relief alleged against them by Lauk.  Defendants do not assume any burden of proof, persuasion or production with respect to any issue where the applicable law places the burden upon Plaintiff.  Defendants

reserve their rights to assert other and additional defenses not asserted herein as may be appropriate at a later time.

1.  Any claim for relief is barred because Defendants have not breached any contractual or other obligations to Plaintiff.

2.  Plaintiff's claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

3.  Plaintiff's claims are barred, in whole or in part, because no alleged act or omission by Defendants, or by any person or entity for which Defendants were responsible, was the proximate cause of any injury or harm alleged by Plaintiff.

4.  Plaintiff's claims are barred, in whole or in part, for failure to mitigate its alleged damages, if such damages exist, and alternatively, its failure to mitigate damages, if such damages exist, should reduce any recovery by Plaintiff.

5.  Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and acquiescence.

6.  Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

7.  Plaintiff's claims are barred by the applicable statutes of limitations, the doctrine of laches and/or any applicable statutes of repose.

8.  Plaintiff is not entitled to equitable relief, including but not limited to specific performance, because there is an adequate remedy at law.

9.  Plaintiff's claims for specific performance is barred because Plaintiff has not shown, and cannot show, that it will suffer any irreparable harm from Defendants' alleged conduct.

10.   Plaintiff has no cause of action for punitive or exemplary damages, and the Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

11.   Any punitive damage award that Plaintiff might recover would violate the Defendants' rights under the United States Constitution and the Constitution of the State of Delaware to due process and equal protection of law as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

12.   Awarding punitive damages without bifurcating the trial and trying the punitive damages only if liability is found on the merits would violate the Defendants' due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and the due process provisions of the Constitution of the State of Delaware.

13.   An award of punitive damages that is not subject to a predetermined limit would violate the Defendants' due process rights and the excessive fines provisions of the United States Constitution and the Constitution of the State of Delaware.

14.   Defendants have not knowingly or voluntarily waived any applicable defenses and reserve the right to assert, and rely upon, such additional affirmative defenses to the Complaint as may become available or apparent as discovery commences and progresses in this action.

**WHEREFORE,** Defendants Solera Global Holding Corp. and Solera Holdings Inc., and each of them, pray as follows:

A.   That Plaintiff's claims be dismissed with prejudice;

B.   That judgment be entered in favor of Defendants on Plaintiff's claims;

C.   That Plaintiff takes nothing against Defendants by way of the Complaint;

D.     For costs of suit incurred herein;

E.     For attorneys' fees and expenses;

F.     For such other and further relief as the Court may deem just;

All to the extent that any indemnification rights under the Amended and Restated Certificate of

Incorporation of Summertime Holding Corp. and the amended and restated Summertime Holding

Corp. bylaws are not triggered, implicated or otherwise available to Plaintiff.


Dated: September 20, 2019                    MORRIS NICHOLS ARSHT & TUNNELL LLP


                                             */s/ John P. DiTomo*
                                             William M. Lafferty (#2755)
                                             John P. DiTomo (#4850)
OF COUNSEL:                                  Alexandra M. Cumings (#6146)
                                             1201 North Market Street
Bryce L. Friedman                            Wilmington, Delaware 19801
Rachel S. Sparks Bradley                     (302) 658-9200
SIMPSON THACHER
    & BARTLETT LLP                           *Attorneys for Defendants Solera Global Holding*
425 Lexington Avenue                         *Corp. and Solera Holdings, Inc.*
New York, New York 10017
(212) 455-2000

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Alexandra M. Cumings*
Alexandra M. Cumings (#6146)