# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KURT LAUK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1718-CFC-CJB |
| | ) | |
| SOLERA GLOBAL HOLDING CORP., | ) | |
| SOLERA HOLDINGS, INC. and DOES 1 | ) | |
| THROUGH 50, INCLUSIVE, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Presently before the Court in this action, which was filed by Plaintiff Kurt Lauk ("Plaintiff") against Defendants Solera Global Holding Corp. and Solera Holdings, Inc. (collectively, "Defendants"), is Defendants' Motion for Judgment on the Pleadings, (the "Motion"), (D.I. 10), filed pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Court recommends that the Motion be GRANTED-IN-PART and DENIED-IN-PART.

## I. BACKGROUND AND LEGAL STANDARD

The Court, which has been referred this matter by United States District Judge Colm F. Connolly to conduct all proceedings and hear and determine all motions, (D.I. 13), writes primarily for the parties here, in an effort to provide a timely decision on the Motion.[1] Thus, the Court dispenses with a lengthy recitation of the factual and procedural background of the matter, and will address any relevant facts in Section II.

---

[1] The Motion was fully briefed on October 24, 2019, (D.I. 16), and the Court held oral argument on the Motion on January 21, 2020.

The Motion is brought pursuant to Federal Rule of Civil Procedure 12(c). In evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d. Cir. 2019). This is the same standard that applies to a Rule 12(b)(6) motion to dismiss. *Id.* at 195. A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). In deciding such a motion, the Court may consider only the pleadings, the exhibits attached thereto, matters of public record and undisputedly authentic documents integral to the pleadings. *Id.*

## II. DISCUSSION

With their Motion, Defendants seek dismissal of each of the four causes of action in the operative Complaint. (D.I. 1) Below, the Court will address each cause of action in the order the parties briefed them.

The Third Cause of Action alleges breach of a Board Member Services Agreement ("BSA"). (*Id.* at ¶¶ 80-84)[2] In his briefing and at oral argument, Plaintiff articulated only one clear theory of breach of the BSA: that Defendants breached the agreement by terminating Plaintiff's position as a director of Defendants without first giving him 30 days' written notice. (D.I. 15 at 9; *see also* D.I. 1, ex. 1 at ¶ 3) Yet pursuant to Delaware law, which applies here, Plaintiff has to plead facts in its Complaint that, *inter alia*, clearly allege such a breach. *See H-M*

---

[2] To the extent that Plaintiff suggests in his briefing that he also intended to plead a claim of breach of the implied covenant of good faith and fair dealing under Delaware law, (D.I. 15 at 9, 15), no such cause of action is pleaded in the Complaint, (*see generally* D.I. 1). To the extent that Plaintiff chooses to file an Amended Complaint hereafter, he may attempt to set out such a claim therein.

2

*Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). And Plaintiff's Complaint never makes any clear allegations about the failure to provide such notice, nor does it give Defendants fair warning that this is the type of breach that is actually being asserted via the Third Cause of Action. (*See generally* D.I. 1) For this reason, the Court recommends that Defendants' Motion as to this cause of action be granted.[3]

The Second Cause of Action alleges Defendants' breach of a Stock Option Agreement ("SOA") entered into with Plaintiff; Plaintiff asserts that upon his termination as a director, he was owed 80% of his vested Service Options and that Defendants have failed to deliver such stock to him or make any payment to him related to such stock. (D.I. 1 at ¶¶ 67-79) In response, Defendants make two arguments as to why no breach could possibly have occurred. First, with regard to 20% of such options that are in dispute, Defendants assert that Plaintiff was not entitled to exercise those options pursuant to Section 2(c)(iv)(A) of the SOA; Defendants claim this is because Section 2(c)(iv)(A) requires the optionholder to have been an *employee* of Defendants, and Plaintiff was simply a *director* (and not an employee) in the relevant time period. (D.I. 16 at 4-7; *see also* D.I. 1, ex. 3 at § 2(c)(iv)(A) (noting that such options vest when the optionholder's "employment with the Company or its Subsidiaries terminates" in certain ways)) But in their briefing, Defendants appear to concede that Plaintiff was otherwise entitled to exercise certain

---

[3] In light of the Court's decision here, it need not address Defendants' separate argument that any such claim of breach must be dismissed because Plaintiff has not sufficiently pleaded how that breach has caused him any damages (a separate element of a claim for breach of contract under Delaware law). (D.I. 16 at 4 (citing *H-M Wexford LLC*, 832 A.2d at 140)) In any Amended Complaint in which Plaintiff raises this breach claim, he would need to plead facts plausibly establishing that this type of breach of the BSA has caused him resulting damages. *See Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, Civil Action No. 15-634-SLR-SRF, 2017 WL 750700, at *3 (D. Del. Feb. 27, 2017), *report and recommendation adopted*, 2017 WL 1055958 (D. Del. Mar. 20, 2017).

Service Options that are described in Section 2(c)(i) of the SOA, (D.I. 11 at 7, 9-10 (Defendants noting that such options "had vested by the time of [Plaintiff's] removal from the Boards on May 26, 2019"))—options that can only vest if the optionholder has been "continuously *employed* by the Company or its Subsidiaries" through the vesting date, (D.I. 1, ex. 3 at § (2)(c)(i) (emphasis added)).[4] Additionally, Section 2(c)(iv)(A) makes reference to a qualifying optionholder's "Termination Date[,]" (*id.* at § 2(c)(iv)(A)), a term that, according to the SOA, applies to the service of directors, (*see id.*, ex. A at 4). These facts, at a minimum, create an ambiguity[5] as to whether Plaintiff qualifies as someone who engaged in "employment" with Defendants for purposes of Section 2(c)(iv)(A), rendering Plaintiff's claim of breach plausible.[6] Second, with regard to the other 60% of disputed Service Options, Defendants argue that they did not breach the SOA by (as Plaintiff asserts) failing to deliver such options, because Plaintiff has not executed a "joinder agreement . . . in form and substance reasonably satisfactory" to them, as is first required by Section 2(e) of the agreement. (D.I. 16 at 7 (quoting D.I. 1, ex. 3 at § 2(e)) Yet Plaintiff points out that he has provided Defendants with a signed letter, dated August 9, 2019, in which he included language very similar to that found in a joinder agreement provided to him by

---

[4] In their Answer, Defendants appear to have made the same concession. (D.I. 8 at *Preliminary Statement*, at ¶ 30; *id.* at *Answer*, at ¶¶ 59-60, 71)

[5] The Court may grant judgment on the pleadings as to a breach of contract claim only where the contract's language unambiguously indicates that no breach could have occurred. *Cf. Greenstar IH Rep, LLC v. Tutor Perini Corp.*, C.A. No. 12885-VCS, 2017 WL 5035567, at *5 (Del. Ch. Oct. 31, 2017).

[6] Thus, the Court rejects Defendants' argument that the first line of Section 2(c)(iv)(A) ("Notwithstanding anything herein to the contrary . . .") unambiguously suggests that the meaning of "employed" within Section 2(c)(i) is irrelevant to the term "employment" in Section 2(c)(iv)(A). (D.I. 16 at 6) That phraseology simply could mean that, "[n]otwithstanding" any other language in the SOA, optionholders are entitled to the Service Options described in Section 2(c)(iv)(A) if they meet the conditions (i.e., regarding a "Qualifying Termination") set forth therein.

Defendants. (D.I. 15 at 16 (citing D.I. 1, ex. 6 at 2); *see also* D.I. 1, ex. 7)) To the Court, it seems plausible that such an act could be understood to amount to execution of a joinder agreement in a "form and substance reasonably satisfactory" to Defendants—and that Defendants' argument to the contrary is really a factual dispute that needs to be adjudicated later in this case.[7] Thus, the Court also finds this allegation of breach plausible. And so, for these reasons, the Court recommends that Defendants' Motion be denied as to the Second Cause of Action.

With regard to the First Cause of Action's claim for specific performance, (D.I. 1 at ¶¶ 56-66), both sides agree that the cause of action rises and falls with the claim for breach of the SOA. (D.I. 15 at 18; D.I. 16 at 7) Because the Court recommends denying Defendants' Motion as to the Second Cause of Action, it also recommends denial as to the First Cause of Action.

Lastly, with regard to the Fourth Cause of Action for conversion, (D.I. 1 at ¶¶ 85-95), such a claim should be dismissed when it is duplicative to a claim for breach of contract; to state a claim of conversion, a plaintiff must plead the violation of "an independent legal duty, apart from the duty imposed by contract." *Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 525 (D. Del. 2013) (internal quotation marks and citation omitted); *see also Khushaim v. Tullow Inc.*, C.A. No. N15C-11-212-PRW, 2016 WL 3594752, at *7-8 (Del. Super. Ct. June 27, 2016). Here, the substance of Plaintiff's claim for conversion appears to be largely identical to its claim for breach of the SOA, (*compare* D.I. 1 at ¶¶ 68-73 *with id.* at ¶¶ 86-91), and Plaintiff does not

---

[7] Put differently, the Court does not read this provision of Section 2(e) as a subjective provision—i.e., one that is only satisfied if Defendants say it is. It seems at least possible (i.e., that there is an ambiguity) that the provision is an objective one, which can be satisfied by Plaintiff doing something other than simply signing the exact joinder agreement provided to him by Defendants—so long as Plaintiff actually executes an agreement that "in form and substance" is the near equivalent to Defendants' proffered joinder agreement. And here, it is at least plausible to the Court that Plaintiff has done so.

clearly plead the violation of some independent legal duty (such as fraud) in this cause of action. In order to do so, Plaintiff would at a minimum need to set out the legal elements for this independent tort and articulate why the facts pleaded suggest it is plausible that the tort has been committed. Plaintiff has not done so here, and so for this reason, the Court recommends that the Motion be granted as to the Fourth Cause of Action.

## III. CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' Motion is GRANTED-IN-PART and DENIED-IN-PART. More specifically, the Court recommends that the Motion be GRANTED as to the Third and Fourth Causes of Action and DENIED as to the First and Second Causes of Action.

Plaintiff requested leave to amend should the Court grant any portion of the Motion. (D.I. 15 at 20) Because it is not clear to the Court that allowing the opportunity to amend would be a futile act, because this is the first time the Court has found any of Plaintiff's claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court recommends that dismissal be without prejudice. It recommends that Plaintiff be given leave to file one further amended complaint addressing the deficiencies outlined above, and that if the District Court affirms its decision herein, Plaintiff be given no more than 14 days to file such an Amended Complaint.

Dated: January 22, 2020

                                                            _/s/ Christopher J. Burke_
                                                            Christopher J. Burke
                                                            UNITED STATES MAGISTRATE JUDGE